STATE of Iowa, Appellee,

v.

Laurie Ann DAY, Appellant.

No. 94–574.

Supreme Court of Iowa.

Feb. 22, 1995.

Linda Del Gallo, State Appellate Defender, and Shari Barron, Asst. State Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Martha E. Boesen, Asst. Atty. Gen., Patrick C. Jackson, County Atty., and Matthew T. Shupe and Scott Brown, Asst. County Attys., for appellee.

Considered by McGIVERIN, C.J., and NEUMAN, SNELL, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

This appeal involves a challenge to a roadblock. Laurie A. Day was charged and convicted of operating while intoxicated (OWI), in violation of Iowa Code section 321J.2 (1993). Day was arrested on June 26, 1993, after she was stopped at a roadblock on Highway 34 on the outskirts of Burlington at approximately 5:00 a.m. She asserts the true purpose of the roadblock was to apprehend drunk drivers, a purpose she contends is not statutorily permissible. We affirm.

## I. *Background.*

After being charged with OWI, Day filed a motion to suppress the evidence obtained from the roadblock, asserting the roadblock was an unconstitutional seizure, *see* U.S. Const. amend. XIV; Iowa Const. art. I, § 8, and a violation of Iowa Code section 321K.1. At the suppression hearing the parties stipulated that the only reason Day's vehicle was stopped was because of the roadblock; there was no other probable cause to stop the vehicle. The only other evidence presented at the hearing was the testimony of Robert Porter, a sergeant in the Iowa State Patrol, who testified as to the purpose of the roadblock and the procedures employed. The trial court found the roadblock met constitutional and statutory requirements and denied the motion to suppress.

Day waived her right to a jury trial. The case was tried to the court upon the stipulation of the parties that the minutes of testimony would be received without objection and the case submitted without further evidence. The minutes disclosed Day was driving a vehicle that was stopped at the roadblock. The officer who approached her vehicle smelled alcohol and observed her eyes were bloodshot and glassy. She indicated that she had been drinking in Illinois. After failing several field sobriety tests she was placed under arrest for OWI. Later she took a breath test which revealed a blood alcohol level of .265.

The court found Day guilty as charged. On appeal she asserts the evidence shows the roadblock was conducted in violation of Iowa Code section 321K.1.

## II. Scope of Review.

■ Although Day raised a constitutional issue in her motion to suppress, only the statutory issue is raised on appeal. As a result our review is to correct errors at law, not de novo. *State v. Sullins,* 509 N.W.2d 483, 485 (Iowa 1993).

## III. Iowa Code Chapter 321K.

Section 321K.1 permits law enforcement agencies to conduct roadblocks under certain circumstances. It provides:

1. The law enforcement agencies of this state may conduct emergency vehicle roadblocks in response to immediate threats to the health, safety, and welfare of the public; and otherwise may conduct routine vehicle roadblocks only as provided in this section. Routine vehicle roadblocks may be conducted to enforce compliance with the law regarding any of the following:

a. The licensing of operators of motor vehicles.

b. The registration of motor vehicles.

c. The safety equipment required on motor vehicles.

d. The provisions of chapters 481A [wildlife conservation] and 483A [fishing and hunting licenses, contraband and guns].

2. Any routine vehicle roadblock conducted under this section shall meet the following requirements:

a. The location of the roadblock, the time during which the roadblock will be conducted, and the procedure to be used while conducting the roadblock, shall be determined by policymaking administrative officers of the law enforcement agency.

b. The roadblock location shall be selected for its safety and visibility to oncoming motorists, and adequate advance warning signs, illuminated at night or under conditions of poor visibility, shall be erected to provide timely information to approaching motorists of the roadblock and its nature.

c. There shall be uniformed officers and marked official vehicles of the law enforcement agency or agencies involved, in sufficient quantity and visibility to demonstrate the official nature of the roadblock.

d. The selection of motor vehicles to be stopped shall not be arbitrary.

e. The roadblock shall be conducted to assure the safety of and to minimize the inconvenience of the motorists involved.

Iowa Code § 321K.1.

■ Subsection 321K.1(2) includes the requirements we held necessary for a roadblock to be constitutional in *State v. Hilleshiem,* 291 N.W.2d 314, 318 (Iowa 1980). The Iowa Court of Appeals applied the *Hilleshiem* criteria and determined that a roadblock to check for intoxicated drivers is not unconstitutional. *State v. Riley,* 377 N.W.2d 242, 244 (Iowa App.1985). The Iowa legislature enacted section 321K.1 in 1986. At the time section 321K.1 was enacted the United States Supreme Court had not decided the constitutionality of a roadblock designed to catch drunk drivers. The Supreme Court has since upheld the constitutionality of such a roadblock stop. *Michigan Dep't of State Police v. Sitz,* 496 U.S. 444, 455, 110 S.Ct. 2481, 2488, 110 L.Ed.2d 412, 423 (1990). As a result, Day concedes that roadblocks to apprehend drunk drivers are constitutional.

Day's argument on appeal is that the purpose of the roadblock was to detect and arrest drunk drivers, a purpose not authorized by section 321K.1(1). Day also argues the State failed to establish it had complied with the statutory requirements of section 321K.1(2). Because the roadblock did not conform to the statutory requirements, she urges the stop was unreasonable and the evidence taken as a result of the seizure must be suppressed.

A. The trial court found "[t]he purpose of the roadblock was to systematically stop all traffic to check equipment, driver's licenses, registrations and any other evident violations." Day argues that the sole or true purpose of the roadblock was to detect and arrest drunk drivers and therefore violated the statute. However, there is substantial evidence in the record to support the factual finding that the purposes of the roadblock

were those authorized by section 321K.1(1)(a)–(c).

 Porter acknowledged he was aware of the drinking hours in Illinois and the reputation of Gulfport, Illinois, which is directly across the Mississippi River from Burlington, as having a number of drinking establishments. The reason why only westbound traffic was stopped on Highway 34 was because there was insufficient personnel to stop traffic from both directions and the westbound traffic would be leaving a toll booth and would unlikely have obtained full speed at the time it reached the roadblock. There was truck traffic and commuter traffic to jobs in Burlington at the time of the roadblock. Three officers involved in the roadblock specialized in trucking matters, and they checked log books and inspected the trucks.

We do not find as a matter of law that the true purpose of the roadblock was to apprehend drunk drivers. If additional violations were discovered, they would be incidental to the primary goal or purpose of the roadblock. We agree with the trial court that officers participating in a roadblock would be derelict in their duties if violations of the law other than those listed in chapter 321K became apparent and were ignored.

B. The trial court also found the roadblock met the requirements of subsections 321K.1(2)(a)–(e). This finding is supported by substantial evidence.

 Porter, who is a supervisory officer second in command in the State Patrol district, met with Captain Wunnenberg of the Burlington Police Department and Chief Deputy Wheeler of the Des Moines County Sheriff's Office approximately one week before the roadblocks were held to determine the times, locations, and procedures for the roadblocks. They agreed to set up two roadblocks on the night of June 25 and the morning of June 26, 1993. The first was set up in downtown Burlington at 10:00 p.m. and was to continue until about 2:00 a.m. The roadblock would then be set up on Highway 34 to operate from 3:00 a.m. to approximately 5:00 or 5:30 a.m. A work-project order was written before the roadblocks were conducted.

Both locations were selected because they were safe places to conduct a roadblock. Each location had illuminated, clearly marked signs indicating the upcoming traffic check. There were lighted barricades directing traffic to the appropriate places to stop. There were fifteen to seventeen uniformed officers at the sites, along with marked law enforcement vehicles, indicating the official nature of the roadblock and providing sufficient personnel to assure safety of the motorists and to minimize any inconvenience. All vehicles coming through the roadblocks were stopped for the purpose of checking vehicle equipment, driver's licenses and registration.

Because there is substantial evidence to support the trial court's findings, we affirm.

**AFFIRMED.**