**STATE of Iowa, Appellee,**

v.

**Sue Anne LOYD, Appellant.**

**No. 94–974.**

Supreme Court of Iowa.

April 26, 1995.

Linda Del Gallo, State Appellate Defender, and John F. Fatino, Asst. State Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Martha E. Boesen, Asst. Atty. Gen., Patrick C. Jackson, County Atty., and Scott Brown and Matthew Shupe, Asst. County Attys., for appellee.

Considered by LARSON, P.J., and CARTER, LAVORATO, NEUMAN, and ANDREASEN, JJ.

ANDREASEN, Justice.

Sue Anne Loyd was charged and convicted of operating while intoxicated (OWI), in violation of Iowa Code section 321J.2 (1993). Loyd was arrested on June 26, 1993, after she was stopped at a roadblock on Highway 34 on the outskirts of Burlington. She asserts the true purpose of the roadblock was to apprehend drunk drivers, which she claims is not a statutorily permissible purpose, and that the roadblock violated her constitutional rights. We affirm.

## I. Background.

After being charged with OWI, Loyd filed a motion to suppress the evidence obtained from the roadblock, asserting the roadblock was an unconstitutional seizure. U.S. Const. amend. XIV; Iowa Const. art. I, § 8. She also claimed the roadblock was in violation of Iowa Code section 321K.1. At the suppression hearing, the parties stipulated that the only reason Loyd's vehicle was stopped was because of the roadblock; there was no other probable cause to stop the vehicle. The only other evidence presented at the hearing was the testimony of Sergeant Robert Porter of the Iowa State Patrol, who testified as to the purpose of the roadblock and the procedures employed. The trial court found the roadblock met constitutional and statutory requirements and denied the motion to suppress.

Loyd waived her right to a jury trial. The case was tried to the court upon the stipulation of the parties that the minutes of testimony would be received without objection and the case submitted without further evidence. The minutes disclosed Loyd was driving a vehicle that was stopped at the roadblock. The officer who approached her vehicle smelled a moderate odor of alcohol on her breath. She stated she had been drinking prior to being stopped. After failing several field sobriety tests, she was placed under arrest for OWI. Later she took a breath test which revealed a blood alcohol level of .217.

The court found Loyd guilty as charged and entered judgment against her. The court sentenced her to a twenty-day suspended sentence and a five-hundred dollar fine. On appeal, she asserts the evidence shows the roadblock was conducted in violation of Iowa Code section 321K.1 and the Iowa and United States Constitutions. She also challenges the sentence imposed by the district court.

## II. Scope of Review.

Our review of Loyd's statutory challenge to the roadblock is to correct errors at law, not de novo. *State v. Sullins*, 509 N.W.2d 483, 485 (Iowa 1993). Our re-

view of her constitutional challenge, however, is de novo. *State v. Harris*, 490 N.W.2d 561, 562 (Iowa 1992). In reviewing Loyd's challenge to the district court's sentencing of her, we review for an abuse of discretion. *See State v. Johnson*, 513 N.W.2d 717, 719 (Iowa 1994).

### III. *Statutory Challenge.*

Loyd was arrested at the same roadblock challenged in *State v. Day*, 528 N.W.2d 100, 101 (Iowa 1995). In *Day* we addressed the identical statutory challenge to the roadblock that Loyd now asserts, and we determined as a matter of law that the true purpose of the roadblock was not to apprehend drunk drivers. Our holding in *Day* is dispositive of Loyd's statutory challenge, and we will not repeat that discussion here. Also, we will not repeat the facts surrounding the roadblock except as necessary to resolve the issues we now address.

### IV. *Constitutional Challenge.*

■ Although Loyd asserts search and seizure violations of both the United States and Iowa Constitutions, we interpret the scope and purpose of the state constitutional clause to be coextensive with federal interpretations of the Fourth Amendment. *State v. Strong*, 493 N.W.2d 834, 835 (Iowa 1992). Loyd's constitutional challenge to the roadblock is largely based on her assumption that the true purpose of the roadblock was to apprehend drunk drivers. Because we have already determined that the true purpose was not to apprehend drunk drivers, we will examine her constitutional challenge as it applies to a roadblock established to check for license, registration, and equipment violations.[1]

■ The essential purpose of the proscriptions of the Fourth Amendment "is to impose a standard of 'reasonableness' upon the exercise of discretion by government officials, including law enforcement agents in order 'to safeguard the privacy and security of individuals against arbitrary invasion....'" *Delaware v. Prouse*, 440 U.S.

648, 653–54, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667 (1979) (citations omitted). Stopping a vehicle at a roadblock constitutes a seizure for Fourth Amendment purposes. *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 450, 110 S.Ct. 2481, 2485, 110 L.Ed.2d 412, 420 (1990). Such a stop, however, is less intrusive than a traditional arrest, and therefore its reasonableness depends on "a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Brown v. Texas*, 443 U.S. 47, 50, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357, 361 (1979) (citations omitted). In determining the constitutionality of such a seizure, we must weigh "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Id.* at 50–51, 99 S.Ct. at 2640, 61 L.Ed.2d at 362.

■ In *State v. Hilleshiem*, 291 N.W.2d 314, 318 (Iowa 1980), we distilled from Supreme Court decisions the criteria necessary for a roadblock stop to be constitutional. The four requirements of *Hilleshiem* are that there minimally exist:

(1) a checkpoint or roadblock location selected for its safety and visibility to oncoming motorists;

(2) adequate advance warning signs, illuminated at night, timely informing approaching motorists of the nature of the impending intrusion;

(3) uniformed officers and official vehicles in sufficient quantity and visibility to "show ... the police power of the community;" and

(4) a predetermination by policy-making administrative officers of the roadblock location, time, and procedures to be employed, pursuant to carefully formulated standards and neutral criteria.

*Id.* at 318. Loyd's challenge to the constitutionality of the roadblock in question is based on her claim that the fourth *Hilleshiem* requirement was not met.

---

1. We note that the United States Supreme Court has upheld the constitutionality of sobriety checkpoints. *Michigan Dep't of State Police v.*

*Sitz*, 496 U.S. 444, 455, 110 S.Ct. 2481, 2488, 110 L.Ed.2d 412, 423 (1990).

### A. Predetermined Plan by Policy-making Officers.

■ Loyd asserts the State failed to prove that the roadblock plan was created by "policy-making administrative officers of the law enforcement agency." Although she argues this as a statutory question under section 321K.1, it is also one of the requirements of *Hilleshiem* and therefore has constitutional ramifications. The purpose behind the requirement is to prevent abuse of discretion by the field officers conducting the roadblock. That purpose was clearly met by the procedures used to conduct the roadblock in question. Porter, who was a supervisory officer and second in command of the State Patrol district, met with Captain Wunnenberg of the Burlington Police Department and Chief Deputy Wheeler of the Des Moines County Sheriff's Office approximately one week before the roadblock was held to determine the time, location, and procedure for the roadblock. All three officers involved in planning the roadblock had supervisory functions. Also, a work order was written and approved by Porter's supervisor, the district commander, before the roadblock took place. As we discussed in *Day*, all the requirements to ensure that the roadblock was operated safely, in a manner to minimize intrusion to the motorists, and to limit the discretion of the field officers were clearly met.

### B. Neutral Criteria.

Loyd argues the roadblock was not established based on neutral criteria. She asserts that to be based on neutral criteria, there must be empirical data supporting the roadblock and the roadblock must be carried out pursuant to a written plan.

■ Her claim that empirical data is necessary relates to the effectiveness of the roadblock in advancing the public interest. Courts should not engage in a searching examination of the effectiveness of a roadblock as an enforcement technique. *See Sitz*, 496 U.S. at 453–54, 110 S.Ct. at 2484, 110 L.Ed.2d at 422 (which law enforcement technique should be used to deal with a serious public danger is a decision to be made by politically accountable officials, not the courts).

■ Although some courts have mentioned empirical data when examining roadblocks, we do not believe empirical data is required to prove the roadblock advances the public interest. Loyd's argument would have us require the State to produce empirical data showing a high incidence of license, registration, and equipment violations at the location of the roadblock. In *Prouse,* the Supreme Court indicated in dicta that conducting a roadblock to check for driver's licenses and vehicle registration would be permissible, even though a policy of randomly stopping cars to check for licenses and registration was unreasonable in the absence of supporting empirical data. *Prouse,* 440 U.S. at 663, 99 S.Ct. at 1401, 59 L.Ed.2d at 673–74. The Court's primary concern in *Prouse* was with the unbridled discretion law enforcement officers have when making random stops. *Id.* at 661, 99 S.Ct. at 1400, 59 L.Ed.2d at 672.

We disagree with Loyd's argument that the roadblock was unconstitutional because it was not conducted pursuant to a written plan. There is no Iowa case which requires a specific written plan before a roadblock may be conducted. Some other states do require a written plan and have held the absence of one or even a slight variation from the plan invalidates the roadblock. *State v. Jones,* 483 So.2d 433, 438 (Fla.1986) (requiring a written plan); *Commonwealth v. Anderson,* 406 Mass. 343, 350, 547 N.E.2d 1134, 1138 (1989) (extending roadblock by half an hour invalidated a stop made after the roadblock was scheduled to end). We do not believe that such strict compliance with a written plan is required in Iowa. The purpose of having a prescribed procedure as to where a roadblock will be held and which cars to stop is to limit the discretion of the field officers conducting the roadblock to prevent arbitrary selection of vehicles to stop. The fear is that unbridled discretion invites abuse such as "the possibility that the roadblock will be utilized to target certain drivers for no other reason than some common characteristic unrelated to the [purpose of the roadblock], such as age, race or condition of the vehicle." *State v. Payne,* 759 S.W.2d 252, 253 (Mo.Ct.App.1988).

Porter testified that the policy of the Iowa State Patrol and his district is to follow the requirements of Iowa Code section 321K.1. Section 321K.1 requires:

a. The location of the roadblock, the time during which the roadblock will be conducted, and the procedure to be used while conducting the roadblock, shall be determined by policymaking administrative officers of the law enforcement agency.

b. The roadblock location shall be selected for its safety and visibility to oncoming motorists, and adequate advance warning signs, illuminated at night or under conditions of poor visibility, shall be erected to provide timely information to approaching motorists of the roadblock and its nature.

c. There shall be uniformed officers and marked official vehicles of the law enforcement agency or agencies involved, in sufficient quantity and visibility to demonstrate the official nature of the roadblock.

d. The selection of motor vehicles to be stopped shall not be arbitrary.

e. The roadblock shall be conducted to assure the safety of and to minimize the inconvenience of the motorists involved.

Iowa Code § 321K.1(2). We find the statute constitutes a policy which is sufficiently detailed to render a roadblock conducted in accordance with it constitutionally reasonable. Following the statutory requirements minimizes the discretion of the field officers as to both operating procedures and the selection of vehicles and therefore restricts the potential intrusion into the public's constitutional liberties.

We therefore conclude the roadblock was not unconstitutional under either the United States or Iowa Constitutions.

V. *Sentencing.*

Loyd argues the district court abused its discretion in sentencing her. She claims a deferred judgment and no fine would have been the correct sentence under the circumstances. She argues that her lack of a criminal record mitigates in favor of a deferred judgment. She also asserts the court imposed the fine because it was under the misperception that she had a full-time job rather than only a temporary job. She argues that as a temporary employee, she did not receive the same pay as permanent employees at the plant where she worked, and therefore it was an abuse of discretion to order her to pay a five-hundred dollar fine.

Iowa Code section 321J.2(2)(a) provides a person who violates the OWI provisions commits:

A serious misdemeanor for the first offense and shall be imprisoned in the county jail for not less than forty-eight hours to be served as ordered by the court ... and assessed a fine of not less than five hundred dollars nor more than one thousand dollars. As an alternative to a portion or all of the fine, the court may order the person to perform not more than two hundred hours of unpaid community service. The court may accommodate the sentence to the work schedule of the defendant.

The trial court has authority to defer judgment, defer sentence, or suspend sentence. Iowa Code § 907.3. This authority includes the authority to defer or suspend a fine. *State v. Chana*, 476 N.W.2d 38, 39 (Iowa 1991).

A sentence will not be upset on appellate review unless the defendant demonstrates an abuse of trial court discretion or a defect in the sentencing procedure, such as trial court consideration of impermissible factors. *State v. Wright*, 340 N.W.2d 590, 592 (Iowa 1983). Sentencing decisions of the trial court are cloaked with a strong presumption in their favor, and an abuse of discretion will not be found unless the defendant shows that such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *Johnson,* 513 N.W.2d at 719. In exercising its discretion, "the district court is to weigh all pertinent matters in determining a proper sentence including the nature of the offense, the attending circumstances, the defendant's age, character, and propensities or chances for reform." *Id.* Generally, a sentencing court is not required to give its reasons for reject-

ing particular sentencing options. *State v. Russian*, 441 N.W.2d 374, 375 (Iowa 1989).

At sentencing the district court recognized Loyd had a "decent record," was normal in maturity and intelligence, and had no particular financial hardships. The court was aware she had been temporarily employed. The sentence imposed by the court was within the statutory limits. We find no abuse of discretion exercised by the court in sentencing Loyd.

**AFFIRMED.**