APPEL, Justice (concurring in part and dissenting in part).
I concur with the majority's disposition with respect to some aspects of this case, but would vacate the decision of the district court and remand the case for consideration of the Lyle factors before convicting and sentencing Crooks. See State v. Lyle , 854 N.W.2d 378, 404 n.10 (Iowa 2014) ; see also Miller v. Alabama , 567 U.S. 460, 477-78, 132 S.Ct. 2455, 2468, 183 L.Ed.2d 407 (2012).
I. Statutory Interpretation Regarding Age Floor.
On the question of statutory interpretation, I agree with the majority that the legislature did not establish a floor for the age of a child who might be treated as a youthful offender. Iowa Code section 232.45 (2011) sets out two paths for waiving children into district court. Under section 232.45(6), a child who is fourteen years of age or older may be tried as an adult. Under section 232.45(7)(a ), a child who is fifteen years of age or younger may be tried as a youthful offender. The notion that a juvenile transfer statute has no lower limit is not a stranger to the law. See Miller , 567 U.S. at 486 & n.14, 132 S.Ct. at 2473 & n.14 (citing statutes). We should be hesitant to read language into a statute absent a compelling reason to do so. See State v. Nicoletto , 862 N.W.2d 621, 625 (Iowa 2015) ; State v. Romer , 832 N.W.2d 169, 177-78 & n.6 (Iowa 2013) ; see also *175 State v. Coleman , 907 N.W.2d 124, 150 (Iowa 2018) (Appel, J., concurring in part and dissenting in part).
II. Categorical Constitutional Attack on Trying Thirteen-Year-Olds as Youthful Offenders.
The notion that juvenile offenders should be subject to transfer with adult criminal sanction regimes has been subject to attack in the literature. One prominent authority has argued that juvenile offenders should never be integrated with adult offenders and should not be incarcerated beyond the age of twenty-five. See Christopher Slobogin, Treating Juveniles Like Juveniles: Getting Rid of Transfer and Expanded Adult Court Jurisdiction , 46 Tex. Tech. L. Rev. 103, 104-05, 131 (2013). Other attacks on transfer of children to adult court focus on automatic transfers, transfers arising out of the exercise of prosecutorial discretion, and the imposition of mandatory sentencing schemes applicable to adults upon transfer. See Ioana Tchoukleva, Note, Children Are Different: Bridging the Gap Between Rhetoric and Reality Post Miller v. Alabama, 4 Cal. L. Rev. Cir. 92, 102-03 (2013).
The lack of an age floor in a statute that may lead to transfer is potentially problematic as certainly at some point very young children simply cannot be held criminally culpable consistent with the cruel and unusual punishment clause of article I, section 17 of the Iowa Constitution. The Iowa statute, however, allows district courts to make the question of whether a thirteen-year-old child is potentially exposed to criminal sanctions on a case-by-case basis. See Iowa Code § 232.45(9).[9]
Sometimes, however, case-by-case evaluations under multifactor tests are so arbitrary that a categorical rule is preferable and even constitutionally required. This is particularly true when we attempt to predict future behavior. In State v. Sweet , for instance, we announced a categorical rule that life without the possibility of parole for juvenile offenders would not be permitted in large part because it was simply impossible to determine with any accuracy which juvenile offender is so incorrigible that no "second look" should be permitted. 879 N.W.2d 811, 838-39 (Iowa 2016). Given the very high stakes, we declined to allow life without the possibility of parole to be imposed by a trial court through what would necessarily be a highly inaccurate and unreliable case-by-case assessment. Id. at 839.
The question in this case for the purpose of the relatively narrow constitutional question presented is whether a district court can, with any degree of reliability, determine which offending children who are thirteen years of age are not likely to be rehabilitated by age eighteen. While Sweet teaches us to exercise great caution before making broad declarations about future behavior, the issue in this case is different from Sweet in three critical respects.
First, the nature of the prediction required under the statute, though difficult, is less problematic than in Sweet . The question of determining which child will need rehabilitative services after five years of juvenile rehabilitation is at least arguably less troublesome than predicting who will ultimately be found to be incorrigible or irredeemably corrupt after full character *176 development and maturity. While there is a professional consensus among psychiatrists that accurate, long-term assessment of juveniles is impossible, there is no such consensus on the inability to assess those who need relatively short-term rehabilitative services. See id. at 838-39 (noting that professional psychologists disclaim the ability to accurately predict which juveniles will be incapable of rehabilitation).
Second, the statute contains a look-back provision. Iowa Code § 907.3A(2). As a result, the consequences of an initial determination that a child will be treated as a youthful offender does not eliminate a timely second look but, in fact, embraces it. Prior to the second look, the child will be in the hands of juvenile authorities charged with providing appropriate services and not in the hands of adult correctional officials meting out punishment. Id. § 907.3A(1). The second-look feature of the statute thus provides a critical check on the potential of arbitrary and irrational imposition of incarceration on a child. The statute thus does not provide for automatic transfer into adult court, an approach that would be constitutionally suspect because of the absence of an individualized determination under Miller and Lyle principles.
Third, the consequence of the determination that a child is a youthful offender is less consequential than in Sweet. In Sweet , the consequence was incarceration for life with no meaningful opportunity to show rehabilitation and maturity. 879 N.W.2d at 840 (Cady, C.J., concurring specially). Here, a youthful offender, even if ultimately subject to a criminal sentence, is not exposed to a mandatory minimum adult sentence because of our ruling in Lyle barring the mandatory imposition of minimum sentences for children. As a result, the consequence of being found to be a youthful offender and ultimately subject to a criminal penalty does not lead to an arbitrary and irrational imposition of an adult mandatory minimum sentence on a child.
Yet, it must be recognized that transfer statutes may ultimately pose certain risks. For instance, a youth who is ultimately incarcerated may lack access to resources sufficient to provide a reasonable means to achieve maturity and rehabilitation. See Holt v. Sarver , 309 F.Supp. 362, 379 (E.D. Ark. 1970) ("The absence of an affirmative program of training and rehabilitation may have constitutional significance where in the absence of such a program conditions and practices exist which actually militate against reform and rehabilitation."), aff'd 442 F.2d 304 (8th Cir. 1971) ; Beth Caldwell, Creating Meaningful Opportunities for Release: Graham, Miller and California's Youth Offender Parole Hearings , 40 N.Y.U. Rev. L. & Soc. Change 245, 286 (2016) (emphasizing that access to rehabilitative programs are essential to providing juvenile offenders a meaningful opportunity for release); Sally Terry Green, Realistic Opportunity for Release Equals Rehabilitation: How the States Must Provide Meaningful Opportunities for Release , 16 Berkeley J. Crim. L. 1, 26 (2011) (providing education and treatment programs "comply with Graham 's mandate for meaningful opportunity for release"); Elizabeth Scott et al., Juvenile Sentencing Reform in a Constitutional Framework , 88 Temp. L. Rev. 675, 712 (2016) [hereinafter Scott] ("[A] meaningful opportunity to reform requires a correctional setting that promotes healthy psychological development."). That, however, is not so much a categorical challenge to the Iowa transfer statute as it is a fact-based challenge to conditions of incarceration.
Although the statute approaches the border of constitutionality, in light of its limiting features, I am not prepared to say, at least at this time, that the statute is *177 categorically infirm in this case under article I, section 17 of the Iowa Constitution at least as applied to thirteen-year-old children. The lower the age of the child, of course, the greater the risk of crossing the constitutional line, and it may well be that at age thirteen we are very close to it. Nonetheless, at present, I am inclined not to strike it down on the grounds that the implementation of the statute with respect to thirteen-year-olds is so irrational as to categorically amount to cruel and unusual punishment under article I, section 17 of the Iowa Constitution. Instead of categorically striking down the statute, I think the better course is to permit challenges on an as-applied basis. No as-applied challenge is raised in this case. I would revisit the issue, however, if in practice, application of Miller and Lyle principles on discretionary decisions under the statute prove arbitrary, inconsistent, or unworkable.
III. Challenges to District Court Sentencing.
A. Awareness of Sentencing Options. The first issue is whether the district court recognized the breadth of its discretion under the applicable statute. If the district court did not recognize the scope of its discretion, a remand for resentencing is required. State v. Thomas , 547 N.W.2d 223, 226 (Iowa 1996) (per curiam); State v. Sandifer , 570 N.W.2d 256, 257 (Iowa Ct. App. 1997). The defendant bears the burden of showing that the district court was unaware of its discretion to impose a particular sentence. State v. Ayers , 590 N.W.2d 25, 29 (Iowa 1999).
Under the statute, the district court has several options for disposition of a youthful offender-
[T]he court may continue the youthful offender deferred sentence or enter a sentence, which may be a suspended sentence.... [I]f the district court either continues the youthful offender deferred sentence or enters a sentence, suspends the sentence, and places the youthful offender on probation, the term of formal supervision shall commence upon entry of the order by the district court and may continue for a period not to exceed five years. If the district court enters a sentence of confinement, and the youthful offender was previously placed in secure confinement by the juvenile court under the terms of the initial disposition order or any modification to the initial disposition order, the person shall receive credit for any time spent in secure confinement.
Iowa Code § 907.3A(3).
At the hearing on sentencing, the district court made extensive comments. The commentary twice affirmatively stated that the court believed the choice was between incarceration and some type of street probation. The district court said,
So, simply stated, I have two options at this point in time. One is some type of street probation and the other would be a term of incarceration....
Then, after observing the statute was "not particularly well drafted," the district court declared, "I've got probation on the one hand or I've got an indeterminate term not to exceed 50 years on the other hand." There is nothing in the record to show that these affirmative statements regarding limited options were based on anything other than the district court's view of the statute.
The statute, however, authorized the district court to defer or suspend the sentence and place the defendant on probation, with the level of supervision to be determined under section 901B.1 by the district department of corrections. Id. § 907.3A(3); id. § 901B.1. Section 901B.1 provides for a corrections continuum of varying levels of restrictiveness, including *178 community-based and residential treatment facilities. Id. § 901B.1(1)(c )(1). Similarly, section 907.3A(3) provides that the district court could have deferred or suspended the sentence and placed Crooks on probation with such terms and conditions that it chose, including commitment to an alternate jail facility or a community-based correction residential treatment facility. Id. § 907.3A(3).
The district court, twice, stated on the record that the choices were "street probation" or incarceration. Nothing in the transcript of the sentencing or dispositional hearing indicates that the district court understood it had the possibility of confining Crooks under the corrections continuum of Iowa Code section 901B.1 and that such confinement could include a residential treatment facility or community-based correction facility. Indeed, the entire discussion of the district court on sentencing suggests that it considered only two options, street probation or incarceration. For instance, the district court stated, "I don't believe it's appropriate to release you on probation" as driving the court into a sentencing option without considering other dispositions.
It may be, of course, that the district court was, in fact, subjectively aware of the other options, but we can only proceed by analyzing the affirmative statements made on the record in this case. The record suggests the district court believed it had two stark choices and not a continuum of choices. I would thus remand for resentencing. See Thomas , 547 N.W.2d at 225 (noting it would be an abuse of discretion in sentencing if the district court was unaware of its discretion in imposing sentencing options); Sandifer , 570 N.W.2d at 257 (explaining the record must reveal the sentencing court in fact exercised discretion in regard to the range of sentencing options).
B. Consideration of Lyle Factors. The next question is whether the court abused its discretion in sentencing Crooks. Under our caselaw, the district court must consider any mitigating factors. See, e.g. , State v. Propps , 897 N.W.2d 91, 102 (Iowa 2017) ; State v. Witham , 583 N.W.2d 677, 678 (Iowa 1998) (per curiam); State v. Draper , 457 N.W.2d 600, 605 (Iowa 1990).
We have repeatedly said "children are constitutionally different from adults for purposes of sentencing." Lyle , 854 N.W.2d at 395 (quoting Miller , 567 U.S. at 471, 132 S.Ct. at 2464 ); see also Propps , 897 N.W.2d at 99 ; State v. Ragland , 836 N.W.2d 107, 119 (Iowa 2013). The differences include "distinctive (and transitory) mental traits and environmental vulnerabilities," Miller , 567 U.S. at 473, 132 S.Ct. at 2465, including a "lack of maturity, underdeveloped sense of responsibility, vulnerability to peer pressure, and the less fixed nature of the juvenile's character," State v. Null , 836 N.W.2d 41, 74 (Iowa 2013) ; see also Sweet , 879 N.W.2d at 832-33 ; Ragland , 836 N.W.2d at 115 n.6. We have emphasized that the constitutionally significant distinction between adults and children is applicable to all crimes, not just some crimes. Sweet , 879 N.W.2d at 831 ; Lyle , 854 N.W.2d at 399 ; Null , 836 N.W.2d at 71.[10]
As noted by the leading recognized authorities in the field, the developmental *179 principle that children are constitutionally different has broad application. See Scott, 88 Temp. L. Rev. at 707-12 (urging broad application of developmental principle that children are different and citing Lyle as example). The principle is applicable to other sanctions and not just the severe sanctions discussed in the cases of the United States Supreme Court. Id. at 707. Indeed, the principle that children are different should inform "policies regulating the sentencing of juveniles whenever they are dealt with in the adult system." Id. It makes no sense at all to say, for instance, that the mitigating characteristics of youth apply only for minimum sentencing and not, for instance, for discretionary sentencing for a term of years. See Barry C. Feld, The Youth Discount: Old Enough to Do the Crime, Too Young to Do the Time , 11 Ohio St. J. Crim. L. 107, 147 (2013). The majority correctly finds that the features of children described in Lyle and our other juvenile cases are mitigating factors that must be considered in any and all contexts involving discretionary sentencing of defendants who committed crimes as children. This makes sense in a criminal justice system where culpability is a cornerstone of proportional punishment.[11]
The remaining question is whether we should require a district court to make specific findings regarding consideration of the mitigating factors of youth when sentencing children in adult court. We have required such specific findings in the context of the case-by-case determination of whether a sentencing court should impose an adult minimum sentence on a child offender. State v. Seats , 865 N.W.2d 545, 557 (Iowa 2015) ; Null , 836 N.W.2d at 71, 74. We have stated that Miller requires "more than a generalized notion of taking age into consideration as a factor in sentencing." Lyle , 854 N.W.2d at 402 n.8 (quoting Null , 836 N.W.2d at 74 ). We require consideration of
(1) the "chronological age" of the youth and the features of youth, including "immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) the "family and home environment" that surrounded the youth; (3) "the circumstances of the homicide offense, including the extent of [the youth's] participation in the conduct and the way familial and peer pressures may have affected [the youth]"; (4) the "incompetencies associated with youth-for example, [the youth's] inability to deal with police officers or prosecutors (including on a plea agreement) or [the youth's] incapacity to assist [the youth's] own attorneys"; and (5) "the possibility of rehabilitation."
Seats , 865 N.W.2d at 570 (alterations in original) (quoting Ragland , 836 N.W.2d at 115 n.6 ); see also Miller , 567 U.S. at 477-78, 132 S.Ct. at 2468.
The requirement of specific findings on mitigating factors in the minimum-sentencing context serves three purposes. It ensures that the mitigating Lyle and Miller factors of youth have been considered, that the Lyle and Miller factors are treated as mitigating and not aggravating factors, *180 and that the heinous character of the crimes has not, as the United States Supreme Court has cautioned, overwhelmed the Lyle and Miller factors. Roper v. Simmons , 543 U.S. 551, 573, 125 S.Ct. 1183, 1197, 161 L.Ed.2d 1 (2005).
It is true that the context of this case is not identical to that faced by courts considering minimum sentences. A minimum sentence is an all-or-nothing proposition-either the adult minimum sentence applies or it does not. Further, when an adult minimum sentence is imposed on a child offender, there is no possibility of revisiting the issue if the predictions of future character development prove wrong.
Yet, in this case, the district court faced a wide range of options with dramatically different consequences on the child offender. As the district court correctly pointed out at the sentencing hearing, the child offender in this case will have the possibility of parole. In that sense, the sentence in this case does not have the highly inflexible character of an adult minimum sentence. But the differences between the available options in this case are truly dramatic and are not less consequential than the imposition of an adult minimum sentence on a child.
Although the context is different, I think the three purposes of requiring specific findings apply here. I do not think it is too much to ask that in these invariably difficult cases, district courts provide a specific explanation of how the plastic characteristics of youth played into the sentencing in this case. We will thus not be required, on appeal, to peer into an empty box in evaluating how the district court approached this key sentencing consideration. Although it is true that we have said in a pre- Lyle case that a sentencing court generally is not required to give reasons for rejecting particular sentencing options, see State v. Loyd , 530 N.W.2d 708, 713-14 (Iowa 1995), we have announced an exception to that rule in our juvenile cases to ensure that sentencing of child offenders occurs within constitutional guardrails, see Seats , 865 N.W.2d at 557 ; Null , 836 N.W.2d at 71, 74. I would apply that concept here as well.
IV. Conclusion.
For the above reasons, I would vacate the sentence of the district court and remand the case to the district court for further proceedings.
Wiggins and Hecht, JJ., join this concurrence in part and dissent in part.

The common law set a rebuttable presumption of incapacity to commit any felony at the age of fourteen. Craig S. Lerner, Juvenile Criminal Responsibility: Can Malice Supply the Want of Years? , 86 Tulane L. Rev. 309, 317 (2011). The common law allowed the presumption to be rebutted by strong and clear evidence that the juvenile possessed the necessary understanding and judgment to form criminal intent. Id.

We have repeatedly applied the principle that children are constitutionally different in factual settings beyond Roper , Graham , and Miller . In Null , we applied the children-are-different principle in the context of aggregate sentencing. 836 N.W.2d at 73. In Lyle , we applied the children-are-different principle to categorically strike down mandatory minimums. 854 N.W.2d at 400. In Sweet , we applied the children-are-different principle to categorically strike down life-without-the-possibility-of-parole sentences. 879 N.W.2d at 839.

At the district court, Crooks argued that the imposition of a fifty-year prison term went against the common law tradition that young children could not form intent and that the sentence "would run counter to the recent scholarly literature on the subject of juvenile punishment, and which literature the Iowa Supreme Court relied upon in its recent cruel and unusual punishment cases dealing with juvenile offenders." Crooks further cited Graham v. Florida as outlining the features of youth to be considered in sentencing, namely their lack of maturity, social development, and risk analysis ability, as well as their susceptibility to familial and peer pressure. 560 U.S. 48, 68, 130 S.Ct. 2011, 2026, 176 L.Ed.2d 825 (2010).