ZAGER, Justice.
A juvenile was sentenced to four consecutive, indeterminate sentences of ten years in prison for four counts of willful injury causing serious injury. No mandatory minimum sentence was imposed. However, because the crime of willful injury causing serious injury is a forcible felony, the sentencing judge was unable to consider a deferred judgment or probation as a sentencing option. The juvenile now challenges, by means of a motion to correct an illegal sentence, the forcible felony sentencing statute under the Iowa Constitution. He argues that the mandatory nature of the prison sentence is unconstitutional given the Iowa Constitution and our precedents in the area of juvenile sentencing. For the reasons set forth below, we find that Iowa Code section 907.3 is not unconstitutional under the Iowa Constitution as applied to juvenile offenders. We vacate the decision of the court of appeals and affirm the judgment of the district court.
I. Background Facts and Proceedings.
On February 27, 2011, Derek Carr was standing outside his home when Troy Lee *95 Mure Jr. drove up in a vehicle in which Sayvon Propps was a passenger. Propps exited the vehicle, fired four shots into Carr, and got back in the vehicle. Mure immediately drove away from the scene. Carr was hit in his back, buttocks, and leg. He was transported to the hospital where he remained hospitalized for three weeks before he was discharged. Propps was seventeen years of age at the time of the crime.
On April 20, the State charged Propps with attempted murder in violation of Iowa Code section 707.11 (2011). Propps entered into a plea agreement with the State whereby he agreed to plead guilty to four counts of the lesser charge of willful injury causing serious injury. The State then amended the trial information to charge Propps with four counts of willful injury causing serious injury in violation of Iowa Code section 708.4(1). Because willful injury causing serious injury is a forcible felony, probation is not an option under Iowa law. See Iowa Code § 702.11(1); id. § 907.3,[1]
Pursuant to the plea agreement, the district court sentenced Propps to indeterminate sentences not to exceed ten years on each of the four counts. The district court ordered each of the sentences to run consecutively to the others for a maximum sentence of forty years. There were no mandatory minimum sentences of incarceration associated with any charge, and no individualized sentencing hearing was conducted.
On July 31, 2014, Propps filed a motion to correct an illegal sentence. Propps argued that, based on recent federal and state caselaw, the sentence imposed constituted cruel and unusual punishment under the Iowa Constitution. Further, Propps argued that the district court was required to conduct an individualized sentencing hearing even though his. sentence contained no mandatory minimum period of incarceration. Propps takes this position due to the evolution of our law surrounding the sentencing of juveniles. The State resisted the motion, claiming that Propps did not receive an illegal sentence in this case. The district court denied the motion, reasoning,
As the State points out, the crime— Willful Injury—to which the Defendant pled and was sentenced, does not implicate a mandatory minimum sentence. Since the Defendant is eligible for parole and may be released at any time, the sentences, whether consecutive or concurrent, are not cruel and unusual, do not violate the federal or state constitutions, are therefore not illegal and Defendant is not entitled to a correction of his sentence or resentencing.
Propps appealed the decision of the district court, and we transferred the case to the court of appeals.
On appeal, Propps argued that “all juveniles, especially those who have been sentenced to a lengthy term of years, must undergo an individualized sentencing hearing regardless of whether or not the sentence has a mandatory term of years.” He asserted that individualized sentencing applied because, as with mandatory míni-mums, the district court had no choice but to sentence him to a term of imprisonment. The court of appeals affirmed the district court’s denial of Propps’s motion to correct an illegal sentence. Propps appealed, and we granted further review.
II. Jurisdictional Argument.
The State raises the issue of whether we have jurisdiction to hear this appeal. Since *96 the district court ruling is on a motion to correct an illegal sentence, the State argues that Propps cannot appeal the denial of his motion to correct an illegal sentence because the ruling denying such a motion is not a “final judgment of sentence” under Iowa Code section 814.6(1). We requested supplemental briefing to address this preliminary issue.
Subject-matter jurisdiction over a claim is conferred either constitutionally or statutorily. De Stefano v. Apts. Downtown, Inc., 879 N.W.2d 155, 164 (Iowa 2016). Iowa Rule of Appellate Procedure 6.103(1) provides that "[a]ll final orders and judgments of the district court involving the merits or materially affecting the final decision may be appealed to the supreme court, except as provided in this rule, rule 6.105, and Iowa Code sections 814.5 and 814.6.” Iowa R. App. P. 6.108(1).[2]
Iowa Code section 814.6 contains the standards for subject-matter jurisdiction for the review of a criminal defendant’s appeal. Iowa Code § 814.6. Pertinent to • this case, a criminal defendant has the “right of appeal” from “[a] final judgment of sentence.” Id. A previous version of the statute provided that “[a]n appeal can only be taken from the final judgment, and within sixty days thereafter.” Iowa Code § 793.2 (1954). The statute was thereafter amended to include the clarifying language “judgment of sentence.” Iowa Code § 814.6 (1983) (emphasis added). This language continues today. See Iowa Code § 814.6(1)(a) (2017).
This is consistent with the general rule that the “[f]inal judgment in a criminal case means sentence.” Daughenbaugh v. State, 805 N.W.2d 591, 595 (Iowa 2011) (quoting Burton v. Stewart, 549 U.S. 147, 156, 127 S.Ct. 793, 798, 166 L.Ed.2d 628 (2007)); see also State v. Loye, 670 N.W.2d 141, 146 (Iowa 2003). “In criminal cases, as well as civil, the judgment is final for the purpose of appeal ‘when it terminates the litigation between the parties on the merits’ and ‘leaves nothing to be done but to- enforce by execution what has been determined.’ ” State v. Aumann, 236 N.W.2d 320, 321-22 (Iowa 1975) (quoting State v. Klinger, 259 Iowa 381, 383, 144 N.W.2d 150, 151 (1966)). In contrast, “decisions, opinions, findings, or verdicts do not constitute a judgment or decree.” Iowa W. Racing Ass’n v. Iowa Racing & Gaming Comm’n, 578 N.W.2d 663, 664 (Iowa 1998) (quoting Wilson v. Corbin, 241 Iowa 226, 228, 40 N.W.2d 472, 474 (1950)).
The final sentencing order in this case was entered on August 16, 2011. Propps brought a motion to correct an illegal sentence on July 31, 2014, and the district court denied the motion on January 13, 2015. In the ruling denying Propps’s motion, the district court neither disturbed the underlying sentence nor entered a new judgment of sentence. An appeal as of right under Iowa Code section 814.6(1)(a) on the grounds of appealing a “final judgment of sentence” was improper in this case. The final judgment of sentence occurred three years prior. However, this does not resolve the jurisdictional issue here.
A criminal defendant may challenge an illegal sentence at any time under Iowa Rule of Criminal Procedure 2.24. Iowa R. Crim. P. 2.24(5)(a); see also State v. Bruegger, 773 N.W.2d 862, 869 (Iowa 2009). A defendant may appeal the denial of a motion to correct an illegal sentence *97 by applying for discretionary review under either Iowa Code section 814.6(2)(e) or Iowa Rule of Appellate Procedure 6.106. Iowa Code § 814.6(2)(e) (allowing discretionary review of “[a]n order raising a question of law important to the judiciary and the profession”); Iowa R. App. P. 6.106 (“An application for discretionary review may be filed to review certain orders specified by statute which are not subject to appeal as a matter of right.”). A defendant may also appeal the denial of a motion to correct an illegal sentence by petition for writ of certiorari under Iowa Rule of Appellate Procedure 6.107. Iowa R. App. P. 6.107(l)(a) (“Any party claiming a district court judge ... exceeded the judge’s jurisdiction or otherwise acted illegally may commence an original certiorari action in the supreme court by filing a petition for writ of certiorari.”). Because section 814.6(l)(a) does not apply to a defendant’s motion to correct an illegal sentence, one of these actions would have been the proper method for bringing such a challenge.
However, a “court has inherent power to determine whether it has jurisdiction over the subject matter of the proceedings before it.” Klinge v. Bentien, 725 N.W.2d 13, 15 (Iowa 2006) (quoting Tigges v. City of Ames, 356 N.W.2d 503, 512 (Iowa 1984)). Discretionary review is available under section 814.6 to orders “raising a question of law important to the judiciary and the profession.” Iowa Code § 814.6(2)(e), Additionally, if a case is initiated by a notice of appeal, but another form of review is proper, we may choose to proceed as though the proper form of review was requested by the defendant rathr er than dismiss the action. Iowa R. App. P¡ 6.108. Accordingly, we will treat Propps’s notice of appeal and accompanying briefs as a petition for writ of certiorari, as we conclude that appeals from a motion to correct an illegal sentence are most appropriately fashioned in this manner. We grant the petition for writ of certiorari.
III. Standard of Review.
An unconstitutional sentence is an illegal sentence, and .therefore may be corrected at any time. State v. Lyle, 854 N.W.2d 378, 382 (Iowa 2014); see also Iowa R. Crim. P. 2.24(5)(a). While we ordinarily review challenges to illegal sentences for correction of legal errors, our standard of review for an allegation of an unconstitutional sentence is de novo. Lyle, 854 N.W.2d at 382.
IY. Analysis.
A. Indeterminate Sentencing and Parole. A determinate sentence imposes a specific number of years of imprisonment on a defendant, while an indeterminate sentence is. one in which the legislature has set a range of the minimum and maximum amount of years deemed appropriate for the crime. See, e.g., 6 Wayne R. LaFave et al., Criminal Procedure § 26.1(c) (2016). Indeterminate sentences are parole eligible, while determinate sentences are not. Id. In this case, the district court sentenced Propps to four indeterminate sentences \wth no mandatory minimum sentence, making Propps immediately eligible for parole.
Once an incarcerated individual is eligible for parole, the Iowa Board of Parole is required to hold yearly file reviews. Iowa Code § 906.5(l)(a); see also Iowa Board of Parole, FAQ/Information, http://www.bop. state.ia.us/BoardFaq (last visited Mar. 20, 2017) (stating the board of parole is required to hold yearly reviews for every eligible offender) [hereinafter Iowa Board of Parole, FAQ/Information].
When the board of parole reviews a file, it may choose to give the offender work release, deny release, or set up an interview. Iowa Code § 906.3, .5. If the board *98 sets up an interview, it uses the interview to determine whether the individual offender should be released to the community under parole supervision for the remainder of the sentence. Id. When making the decision to release an inmate on parole, the board considers a number of factors, including
a. Previous criminal record;
b. Nature and circumstances of the offense;
c. Recidivism record;
d. Convictions or behavior indicating a propensity for violence;
e. Participation in institutional programs, including academic and vocational training;
/. Psychiatric and psychological evaluations;
g. Length of time served;
h. Evidence of serious or habitual institutional misconduct;
i. Success or failure while on probation;
j. Prior parole or work release history;
⅛. Prior refusal to accept parole or work release;
l. History of drug or alcohol use;
to. A parole plan formulated by the inmate;
n. General attitude and behavior while incarcerated;
o. Risk assessment.
Iowa Admin. Code r. 205—8.10.
This is consistent with the provisions of Iowa Code section 906.5(3), which provides that
the board shall consider all pertinent information regarding the person, including the circumstances of the person’s offense, any presentence report which is available, the previous social history and criminal record of the person, the person’s conduct, work, and attitude in prison, and the reports of physical and mental examinations that have been made.
Iowa Code § 906.5(3).
B. Cruel and Unusual Punishment and Juvenile Sentencing. Both the United States Constitution and the Iowa Constitution prohibit cruel and unusual punishment. U.S. Const, amend. VIII; Iowa Const, art. I, § 17. In recent years, both the United States Supreme Court and this court have addressed whether certain juvenile sentencing practices violate the prohibition against cruel and unusual punishment.
The Eighth Amendment right to be free from cruel and unusual punishment “flows from the basic ‘precept of justice that punishment for crime should be graduated and proportioned’ to both the offender- and the offense.” Miller v. Alabama, 567 U.S. 460, 469, 132 S.Ct. 2455, 2463, 183 L.Ed.2d 407 (2012) (quoting Roper v. Simmons, 543 U.S. 551, 560, 125 S.Ct. 1183, 1190, 161 L.Ed.2d 1 (2005)). Proportionality is key in an Eighth Amendment analysis, and we view proportionality according to “the evolving standards of decency that mark the progress of a maturing society.” Id. (quoting Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)).
In 2005, the Supreme Court held in Roper that the sentence of capital punishment when imposed upon a juvenile violates the prohibition on cruel and unusual punishment contained in the Eighth Amendment. 543 U.S. at 560, 125 S.Ct. at 1190. In 2010, the Supreme Court held in Graham v. Florida that the Eighth Amendment prohibits the imposition of a sentence of life without the possibility of parole for juveniles convicted of nonhomi-cide offenses. 560 U.S. 48, 74, 130 S.Ct. 2011, 2030, 176 L.Ed.2d 825 (2010). Final *99 ly, in 2012, the Supreme Court held in Miller that mandatory sentences of life without the possibility of parole when imposed on juveniles violate the Eighth Amendment. 567 U.S. at 489-90, 132 S.Ct. at 2475. Miller requires a sentencing court to make individualized sentencing decisions that take into consideration an offender’s age and age-related characteristics before imposing “the harshest possible penalty for juveniles” of a life sentence without the possibility of parole. Id.
Following the Miller decision, Governor Branstad commuted the sentences of all juveniles in Iowa serving mandatory life-without-parole sentences to sentences of sixty years without parole and with no credit for earned time. See State v. Ragland, 836 N.W.2d 107, 110 (Iowa 2013). We then heard a trio of cases that considered both the Miller case and the cruel and unusual punishment clause of the Iowa Constitution.
In Ragland, we held that Miller applied retroactively. Id. at 117. We then went on to hold that the governor’s commutation had the same effect as a life sentence without the possibility of parole, and therefore the Miller requirement of individualized sentencing applied. Id. at 119, 122. In determining that Miller applied to the commuted sentences, we noted that
the original sentence imposed on Rag-land by the district court was a mandatory sentence. The sentencing court had no other option but to impose the one sentence provided by law. This result is important in the analysis because it goes to the heart of Miller, which states that “children are constitutionally different from adults for purposes of sentencing,” and a mandatory life sentence without parole imposed on juveniles means young offenders “die in prison even if [the sentencing judge] would have thought that his youth and its attendant characteristics ... made a lesser sentence ... more appropriate.” Important ly, the mandatory penalty component totally precludes the sentencing court from taking the critical aspects of youth into account in the imposition of a sentence.
Id. at 119 (quoting Miller, 567 U.S. at 465, 470-72, 132 S.Ct. at 2460, 2464). The commutation did not cure the absence of an individualized sentencing hearing because “Miller protects youth at the time of sentencing.” Id.
In State v. Null, we considered the cruel and unusual punishment clause of the Iowa Constitution. 836 N.W.2d 41, 70 (Iowa 2013); see also Iowa Const, art. I, § 17. We held that a lengthy term-of-years sentence—in this case a 52.5 year sentence— triggered the protections of a Miller individualized sentencing hearing. Null, 836 N.W.2d at 71. We reasoned that “geriatric release” after a lengthy term-of-years sen-' fence does not provide a juvenile a meaningful opportunity to demonstrate their maturity and rehabilitation. Id. Similarly, in State v. Pearson, we held that a minimum sentence of thirty-five years triggered a Miller individualized sentencing hearing. 836 N.W.2d 88, 96 (Iowa 2013).
After the Ragland-Null-Pearson trio, we went on to consider juvenile sentencing under the Iowa Constitution in a number of other cases. In Lyle, we held that all mandatory minimum sentences of imprisonment for juveniles are unconstitutional under article I, section 17 of the Iowa Constitution. 854 N.W.2d at 400. We also summarized the background of change in the area of juvenile sentencing reform and touched on the topic of parole briefly. Id. at 399-400. We noted that the United States Supreme Court has recognized that the opportunity for parole lessens the severity of a sentence. Id. at 399; see also Rummel v. Estelle, 445 U.S. 263, 280-81, *100 100 S.Ct. 1133, 1142-43, 63 L.Ed.2d 382 (1980) (recognizing the opportunity for parole, “however slim,” mollifies the severity of the sentence). We ultimately concluded that the “heart of the constitutional infirmity with the punishment imposed in Miller was its mandatory imposition, not the length of the sentence.” Lyle, 854 N.W.2d at 401. We confirmed that the Iowa Constitution applied to mandatory sentences of prison without the opportunity for parole, regardless of the length of the sentence. Id.
[I]f mandatory sentencing for the most serious crimes that impose the most serious punishment of life in prison without parole violates article I, section 17, so would mandatory sentences for less serious crimes imposing the less serious punishment of a minimum period of time in prison without parole.

Id.

In State v. Louisell, we addressed the question of whether Louisell truly had a “meaningful opportunity for parole” during resentencing or whether her eligibility for parole was simply illusory. 865 N.W.2d 590, 601 (Iowa 2015). Louisell argued that, even with a sentence of life with the possibility of parole, her parole eligibility was illusory because only one of Iowa’s thirty-eight juvenile offenders originally sentenced to life without parole had actually been granted parole by the time of her resentencing. Id. This single inmate was granted parole on conditional release to hospice care for cancer treatment, and the parole board specifically reserved the right to reconsider its decision if her health improved. Id. We declined to address the question of whether Louisell had been wrongfully denied parole. Id. at 602. However, we did take the opportunity to “reaffirm that under both the United States Constitution and the Iowa Constitution, juveniles convicted of crimes must be afforded a ‘meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation’—if a sentencing judge, exercising discretion, determines parole should be available.” Id. (quoting Graham, 560 U.S. at 75, 130 S.Ct. at 2030). We also noted that the factors utilized by the parole board to determine parole eligibility do not “account for the mitigating attributes of youth.that are constitutionally required sentencing considerations.” Id.
In State v. Seats, we expanded on our previous cases to clarify the factors a district court should consider when faced with a case in which it had the discretion to sentence a juvenile to life in prison without the possibility of parole. 865 N.W.2d 545, 556-57 (Iowa 2015). Finally, we recently categorically banned the imposition of life-without-parole sentences for juveniles in State v. Sweet, 879 N.W.2d 811, 839 (Iowa 2016). We noted that part of the justification for the categorical ban on juvenile life-without-parole sentences is that the Miller individualized sentencing hearing is insufficient in that context since “we are asking the sentencer to do the impossible, namely, to determine whether the offender is ‘irretrievably corrupt’ at a time when even trained professionals with years of clinical experience would not attempt to make such a determination,” Id, at 837. We found that it was the parole board that was best situated to discern which offenders are irreparably corrupt and which have benefited from opportunities for maturation and rehabilitation. Id. at 839.
C. Application to the Present Case, Propps argues that Iowa’s forcible felony sentencing provision is unconstitutional because it does not allow the sentencing judge the option of probation and therefore, mandates a prison sentence, however short, for juveniles. See Iowa Code § 907.3 (2011).[3] Although the sentencing statute *101 allows for indeterminate sentences, Propps argues that' the sentencing structure does not allow the sentencing judge to “consider the mitigating factors of the offender, specifically a juvenile offender, upon conviction of this crime.”
Propps seeks to expand Lyle to cases such as his, even though he has no mandatory minimum period of incarceration and he is immediately eligible for parole. We decline to do so. Completely eliminating the mandatory imposition of a prison term, even when the term is indeterminate and the' individual is immediately eligible for parole, would not serve the proportionality concept we have addressed in our previous juvenile sentencing cases. In those cases, we sought to eliminate' the mandatory nature of mandatory minimums and sentences that were the functional equivalent of life without parole because those sentences did not offer juveniles a “meaningful opportunity” to demonstrate their rehabilitation before the parole board. See, e.g., Lyle, 854 N.W.2d at 402-03; Null, 836 N.W.2d at 75; Pearson, 836 N.W.2d at 97; Ragland, 836 N.W.2d at 121. Our goal was not to excuse the behavior of juveniles, but rather to impose punishment in a way that was consistent with the lesser culpability and greater capacity for change of juvenile offenders. Lyle, 854 N.W.2d at 398, 402-03; Null, 836 N.W.2d at 75 (“[W]hile youth is á mitigating factor in sentencing, it is not an excuse.”). We were concerned that offering “geriatric release” or the geriatric opportunity for parole was not consistent with the concept of proportionality. Null, 836 N.W.2d at 71.
This is in stark contrast to the Situation presented here. In this case, Propps was immediately eligible' for parole and able to demonstrate by his own actions his maturation and rehabilitation. When a one-size-fits-all mandatory minimum is imposed, an arbitrary amount of time spent in prison dictates when a juvenile will be released. See, e.g., Ragland, 836 N.W.2d at 122. In contrast, when an indeterminate sentence is given .that contains no mandatory minimum sentence and allows a juvenile to be immediately eligible for parole, the juvenile defendant’s behavior in prison dictates when parole, will be availabler— with the potential for immediate parole if rehabilitation, maturity, and reform have been demonstrated. See, e.g., Louisell, 865 N.W.2d at 601.
It is true that immediate eligibility for parole is not the same as immediately coming before the parole board for review. See Iowa .Code § 906.5(1). We require the board of parole to review- the status of individuals eligible for parole on an annual basis. Id. However, in our juvenile sentencing cases, we have never required that release on parole be immediate. See, e.g., Louisell, 865 N.W.2d at 602 (establishing that the opportunity for parole need only be realistic and meaningful). We-have instead required that- juvenile defendants must be given a realistic and meaningful opportunity to demonstrate maturity and rehabilitation—if a-sentencing-judge, exer- *102 rising discretion, determines parole should be available. Id. at 601. Propps’s immediate eligibility for parole, upon the parameters outlined in section 906.5, is both realistic and meaningful.
The analysis undertaken by the parole board for parole eligibility is an individualized analysis that considers the juvenile’s past, in addition to current psychiatric and psychological evaluations, the time already served on the sentence, any reports of misconduct or good behavior, and the inmate’s attitude and behavior while incarcerated. See Iowa Code § 906.5(3). We noted in Louisell that the factors utilized by the parole board to determine parole eligibility may not “account for the mitigating attributes of youth that are constitutionally required sentencing considerations.” 865 N.W.2d at 602. However, more recently, we noted that the Miller individualized sentencing hearings are insufficient in the context of Iife-without-parole sentencing. Sweet, 879 N.W.2d at 837 (“[W]e are asking the sentencer to do the impossible, namely, to determine whether the offender is ‘irretrievably corrupt’ at a time when even trained professionals with years of clinical experience would not attempt to make such a determination.”). In our most recent case, Sweet, we found that the parole board was best situated to discern which juvenile homicide offenders have benefited from opportunities for maturation and rehabilitation. Id. at 839. The parole board has the benefit of seeing the individual offender’s actual behavior, rather than having to attempt to predict chances at maturity and rehabilitation based on speculation.
Further, allowing a sentencing judge to grant a suspended sentence for a forcible felony may not further the purpose of rehabilitation. While juveniles may be more prone to reform and rehabilitation because of their age and the attendant characteristics of youth, they must also understand the severity of their actions. See Lyle, 854 N.W.2d at 398-99. Harm to a victim is not lessened because of the young age of an offender, and “[t]he constitutional analysis is not about excusing juvenile behavior, but imposing punishment in a way that is consistent with our understanding of humanity today.” Id. at 398. Allowing a sentence of merely probation for forcible felonies may excuse the criminal behavior of the juvenile offender and disproportionately weigh this equation to only consider the age and culpability of the offender without the harm he or she caused to a victim. Because an indeterminate sentence allows for immediate eligibility for parole, a juvenile is able to demonstrate to the parole board whether he or she appreciated the harm done and utilized the options available for reform. If rehabilitation has not yet occurred, the parole board may make the decision to continue incarceration until the juvenile has demonstrated through his or her own actions the ability to appreciate the severity of the crime. This is consistent with the approach of our prior holdings in the area of juvenile sentencing, because it allows for a realistic and meaningful opportunity for parole upon the juvenile’s demonstration of maturity and rehabilitation. We find that there is no constitutional infirmity in Iowa Code section 907.3. This provision does not violate the Iowa Constitution under a cruel and unusual punishment analysis.
D. Gross Disproportionality. Having determined that the sentence for willful injury survives a categorical challenge, we now turn to Propps’s claim that the sentence is unconstitutional as applied to him, which we analyze for gross disproportionality. See, e.g., State v. Oliver, 812 N.W.2d 636, 647 (Iowa 2012). In his brief in support of his motion to correct an illegal sentence, Propps did not specifically *103 distinguish between the argument that his sentence was grossly disproportionate as applied to him and the argument that the sentencing structure was categorically unconstitutional. The district court decided the case on a categorical basis and did not address the question of gross dispropor-tionality. On appeal, Propps argued his sentence was unconstitutional as applied to him, and the court of appeals considered and rejected the argument.
While we generally do not decide cases based on grounds not raised in the district court, in Bruegger we allowed a defendant to continue with an as-applied challenge when his brief did not clearly distinguish between a categorical or as-applied attack on his sentence. 773 N.W.2d at 884. Because Propps’s brief was likewise unclear, we will continue with the analysis under an as-applied framework.
When we determine whether a sentence is grossly disproportionate to an offender’s crime, we utilize a three-step analysis. Oliver, 812 N.W.2d at 647. The first step in this analysis is a threshold question, and if the first step is not satisfied, we need not proceed to steps two and three. Id. Our first step is to determine whether Propps’s sentence leads to the inference that it Was grossly disproportionate. Id. “This preliminary test involves a balancing of the gravity of the crime against the severity of the sentence.” Id. (quoting Bruegger, 773 N.W.2d at 873). Step two requires an intrajurisdictional analysis in which we “comparfe] the challenged sentence to sentences for other crimes within the jurisdiction.” Id. Step three requires an interjurisdietional analysis, and we “compar[e] sentences in other jurisdictions for the same or similar crimes.” Id.
We now turn to the threshold inquiry to determine whether Propps’s sent,erice leads to an inference of gross disproportionality to his crime. When we consider this first step, we have established a few general principles to guide our analysis. Id. at 650. First, we give substantial deference to the legislature when it establishes punishments for certain crimes. Id. Second, “it is rare that a sentence will be so grossly disproportionate to the crime as to satisfy the threshold inquiry and warrant further review.” Id. Third, a recidivist offender is more culpable than a first-time offender and therefore more deserving of a longer sentence. Id. Last, a case can have unique features that may “converge to generate a high risk of potential gross disproportionality” and so we must consider the unique facts of the case. Id. (quoting Bruegger, 773 N.W.2d at 884).
In this case, Propps’s challenge to his sentence is not the rare sentence that survives the first step of our analysis. Propps was sentenced to four indeterminate sentences not to exceed ten years each for four counts of willful injury causing serious injury, and he was immediately eligible for parole. The legislature has determined that there are certain crimes that are so severe that a defendant should not be eligible for a sentence of probation. See Iowa Code § 907.3. Forcible felonies such as willful injury causing serious injury are among those crimes the legislature has deemed severe. Id. § 702.11(1); id. § 708.4(1); id. § 907.3. We give deference to the legislature’s determination that these crimes are more deserving of sentences of incarceration rather than probation. Additionally, the gravity of Propps’s crime was-high. Propps fired four shots at his victim and fled the scene. His' actions required a lengthy hospital stay for Carr. In contrast, his sentence was not severe. Propps was sentenced to four indeterminate sentences, making him immediately eligible for parole review. The gravity of Propps’s crime was high, and the severity *104 of his sentence was low. See, e.g., Oliver, 812 N.W.2d at 647. This was not the rare case that satisfies our threshold inquiry and requires us to continue to steps two and three of the analysis. We hold that Propps’s sentence was not unconstitutional under a gross disproportionality analysis.
E. Miller Hearing. Because we determine that the sentence Propps received is ■ not categorically unconstitutional, and thus there is no constitutional infirmity with the statute, we decline to extend the requirement of a Miller individualized sentencing hearing to' juvenile defendants who are not subject to a mandatory minimum period of incarceration. Propps is therefore not entitled to a Miller individualized sentencing hearing. He has received a meaningful; reasonable, and immediate opportunity for parole, which is all that is required under our decision in Lyle and the United States and Iowa Constitutions.
V. Conclusion.
We hold that the forcible felony sentencing statute, Iowa Code section 907.3, is not unconstitutional as applied to juvenile offenders. Additionally, in considering a motion to correct an illegal sentence, the district court is not required to conduct a Miller individualized sentencing hearing. We therefore annul the writ
DECISION OF COURT OF APPEALS VACATED; WRIT ANNULLED.
Waterman and Mansfield, JJ., join this opinion. Cady, C.J., files a concurring opinion in which Wiggins, J., joins. Appel, J., files a dissenting opinion in which Hecht, J., joins.

. In pertinent part, section 901.5 provides the standards for when a district court may impose a deferred judgment, deferred sentence, or suspended sentence. Iowa Code § 901.5. However, in the case of a forcible felony, the section does not apply. Id. § 907.3.

. Iowa Code section 814.5 provides the rales for the right of appeal when the State is the appellant or applicant, Iowa Code § 814.5, Rule 6.105 provides the rales for appeals tried as small claims actions. Iowa R. App. P. 6.105. Neither section is pertinent to our analysis of this case, and we confine our discussion to section 814.6.

. In 2013, the legislature adopted the following provision:
*101 14. Notwithstanding any provision in section 907.3 or any Other provision of law prescribing a mandatory minimum sentence for the offense, if the defendant, other than a child being prosecuted as a youthful offender, is guilty Of a public offense other than a class "A” felony, and was under the age of eighteen at the time the offense was committed, the court may . suspend the sentence in whole or- in part, including any mandatory minimum sentence, or with the consent of the defendant, defer judgment or sentence, and place ,the defendant on probation upon such conditions as the'court may require.'
Iowa Acts ch. 42, § 14 (codified at Iowa Code § 901.5(14) (2014)). Propps does not argue that this provision applies to his resentencing.