# IN THE COURT OF APPEALS OF IOWA

No. 17-1541
Filed August 1, 2018

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**JOSEPH EUGENE SHADE,**
　　　　Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Karen A. Romano (waiver/plea) and Carla T. Schemmel (sentencing), Judges.

Defendant challenges his sentence for robbery in the first degree. **AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

Mark C. Smith, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

Joseph Shade was convicted of robbery in the first degree, in violation of Iowa Code section 711.2 (2016). At the time of the offense, Shade was sixteen years old. The district court sentenced Shade to an indeterminate term of incarceration not to exceed twenty-five years with no mandatory minimum. In this appeal, Shade challenges his sentence. He contends he was entitled to a *Miller* hearing at the time of sentencing. *See State v. Lyle*, 854 N.W.2d 378, 402 n.8 (Iowa 2014); *State v. Ragland*, 836 N.W.2d 107, 115 n.6 (Iowa 2013) (listing required sentencing factors identified in *Miller v. Alabama*, 567 U.S. 460, 477 (2012)). He also contends his counsel provided constitutionally-deficient representation at the time of sentencing. Finally, he contends the district court imposed an illegal surcharge.

By way of background, in December 2016, Shade accompanied another man to meet Jessica Valles Rivera at a local elementary school for the purported purpose of purchasing a smart phone from Rivera. According to Shade, he served as a look out while the other man approached the car, pulled out a handgun, and pointed it at Rivera and her husband while demanding money. The man then fled with a wallet, forty dollars, and the phone. Rivera's children were in the car at the time of the robbery. According to the victim, Shade was the person who wielded the gun.

In January 2017, Shade was charged with the robbery of Rivera and her husband as well as two additional armed robberies in unrelated incidents. At the time Shade was charged with the Rivera robbery, he was already subject to a

juvenile-court consent decree for the armed robbery of a taxi driver in a different incident. As part of a plea agreement, Shade pleaded guilty to one count of robbery in the first degree arising out of the robbery of Rivera, and the State agreed to dismiss the other two counts. The parties were free to argue at the time of sentencing. After hearing argument and recommendations from both sides, the district court sentenced Shade to an indeterminate term of incarceration not to exceed twenty-five years without any mandatory minimum. The court reasoned,

> For the sentence consideration, the Court determines that the sentence set forth herein will provide maximum opportunity for rehabilitation of the defendant and protection of the community from further offenses.
> Pursuant to the Iowa Code, the Court has considered the following factors: The defendant's age, the defendant's prior record of convictions and deferment of judgments, if any, the defendant's family circumstances, the nature of the offense committed.
> . . . .
> . . . I want you know this is a difficult case. You are young, but you have been committing violent crimes.
> I do, however, consider your safety, and I am not convinced that you would be any safer in the public than you would be in prison, number one; number two, there are programs available in prison for you to take advantage of, but that's up to you. And if you don't take advantage of them, you may find yourself repeating and repeating in the system.
> You are a bright young man. You had troubles in your life, and you went down the wrong way. This is not the end. It will be difficult. You're going to have to be a man. I hope you can be successful in prison and get out and become a good and productive citizen of this country. And I do sincerely wish you the best.

In his first challenge to his sentence, Shade contends the district court abused its discretion in sentencing him without holding a *Miller* hearing or the substantial equivalent of a *Miller* hearing. "We review for an 'abuse of discretion,' our most deferential standard, 'if the sentence is within the statutory limits.' We review for 'correction of errors at law,' an intermediate standard, 'when the

defendant challenges the legality of a sentence on nonconstitutional grounds.'" *State v. Roby*, 897 N.W.2d 127, 137 (Iowa 2017) (quoting *State v. Seats*, 865 N.W.2d 545, 552–53 (Iowa 2015)). "A discretionary sentencing ruling . . . may be [an abuse of discretion] if a sentencing court fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only appropriate factors but nevertheless commits a clear error of judgment by arriving at a sentence that lies outside the limited range of choice dictated by the facts of the case." *Id.* at 138 (second alteration in original) (quoting *People v. Hyatt*, 891 N.W.2d 549, 576 (Mich. 2016)). Still, sentences within statutory limits are "cloaked with a strong presumption in [their] favor." *See State v. Washington*, 832 N.W.2d 650, 660 (Iowa 2013) (quoting *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002)).

We reject Shade's contention that the district court was required to conduct a *Miller* hearing or the substantial equivalent of *Miller* hearing. Iowa Code section 907.5 sets forth a number of statutory sentencing considerations. These include "the nature of the offense, the attending circumstances, defendant's age, character, propensities, and chances of his reform." *See State v. Evans*, 672 N.W.2d 328, 331 (Iowa 2003) (citing *State v. Laffey*, 600 N.W.2d 57, 62 (Iowa 1999)). In addition, our supreme court has created a separate sentencing procedure for cases involving juvenile offenders subject to minimum sentences. In those cases, the district court must conduct a *Miller* hearing in which it considers the chronological age of the youth and features of youth, the family and home environment, the circumstances of the offense, the incompetencies associated

with youth, and the possibility of rehabilitation. *See Lyle*, 854 N.W.2d at 402 n.8; *Ragland*, 836 N.W.2d at 115 n.6 (Iowa 2013) (listing required sentencing factors identified in *Miller*, 567 U.S. at 477). The supreme court has explicitly declined to expand these hearing requirements to cases not involving minimum sentences. *See State v. Propps*, 897 N.W.2d 91, 101 (Iowa 2017). The supreme court reasoned the rationale underlying *Miller*, *Ragland*, *Lyle*, and their progeny is not implicated where the defendant is not subject to a minimum sentence. *See id.* ("When a one-size-fits-all mandatory minimum is imposed, an arbitrary amount of time spent in prison dictates when a juvenile will be released. In contrast, when an indeterminate sentence is given that contains no mandatory minimum sentence and allows a juvenile to be immediately eligible for parole, the juvenile defendant's behavior in prison dictates when parole will be available—with the potential for immediate parole if rehabilitation, maturity, and reform have been demonstrated." (citations omitted)). More recently, the supreme court concluded the district court was not required to conduct a *Miller* hearing where the juvenile defendant could have been subject to a minimum sentence but where the district court declined to impose a minimum sentence. *See State v. Crooks*, 911 N.W.2d 153, 173 (Iowa 2018) (holding the district court was not required to conduct a *Miller* hearing where the defendant was subject to a minimum sentence but the district court declined to consider imposing the same). Here, the district court declined to impose a minimum sentence and instead made the defendant immediately eligible for parole. Under *Propps and Crooks*, a *Miller* hearing or the substantial equivalent of a *Miller* hearing was not required. *See Propps*, 897 N.W.2d at 104 ("[W]e decline

to extend the requirement of a Miller individualized sentencing hearing to juvenile defendants who are not subject to a mandatory minimum period of incarceration."); *Crooks*, 911 N.W.2d at 173.

In his next claim, Shade alleges his sentencing counsel provided constitutionally-deficient representation at the time of sentencing. We review ineffective-assistance claims de novo. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). To establish a claim of ineffective assistance of counsel, a defendant must show "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). The defendant must prove both elements by a preponderance of the evidence. *See State v. Madsen*, 813 N.W.2d 714, 723 (Iowa 2012). "Prejudice exists if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 727 (quoting *State v. Graves*, 668 N.W.2d 860, 882 (Iowa 2003)).

Shade has not proved his sentencing counsel's performance was so deficient that it breached an essential duty. First, Shade contends his counsel should have called witnesses at sentencing. However, Shade does not identify the witnesses or the substance of their testimony. Shade's second claim is that counsel was not zealous because he failed to argue the *Lyle/Miller* factors at sentencing. As noted above, Shade was not entitled to a *Miller* hearing. Thus, his counsel could not have breached a duty in failing to argue the factors. Beyond that consideration, however, counsel strongly argued Shade's youth was a mitigating factor. Counsel repeatedly referenced Shade's age, youth, potential for

rehabilitation, and "the lack of the development in the mind of a young man at this age and their impulsive behavior." Finally, Shade contends his counsel advocated for an illegal sentence. Counsel sought a placement for Shade in Fort Des Moines, a residential facility, but Shade did not qualify for the facility because of his age. Shade argues, "By requesting imposition of placement at the residential treatment facility, trial counsel was essentially requesting the district court impose an illegal sentence." However, Shade misrepresents his counsel's position. Shade's counsel stated his position that Shade be held in custody until the time that he qualified for that program. Shade's counsel also identified a different residential facility for Shade. There was no breach of duty for any of these claims.

In addition, we conclude Shade failed to prove prejudice. Shade does not even allege he suffered *Strickland* prejudice. Rather, he contends his counsel's performance constituted structural error. "Structural errors are not merely errors in a legal proceeding, but errors 'affecting the framework within which the trial proceeds.'" *Lado v. State*, 804 N.W.2d 248, 252 (Iowa 2011) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)).

> We have recognized structural error occurs when: (1) counsel is completely denied, actually or constructively, at a crucial stage of the proceeding; (2) where counsel does not place the prosecution's case against meaningful adversarial testing; or (3) where surrounding circumstances justify a presumption of ineffectiveness, such as where counsel has an actual conflict of interest in jointly representing multiple defendants.

*Id.* (citing *State v. Feregrino*, 756 N.W.2d 700, 707 (Iowa 2008)).

Shade asserts without explanation "counsel's failure to present mitigating evidence bearing on Shade's youth and for counsel arguing for a sentence

recommendation that was not available [sic] should be considered structural error."
We disagree. Counsel advocated for Shade at sentencing, even arguing four of the five *Miller* factors, although not referring to them as such. The record also reflects counsel made arguments in favor of an alternate residential facility or a period of custody until Shade met the age qualifications at Fort Des Moines. In sum, Shade's counsel made an impassioned argument for leniency that ultimately failed. Shade has failed to make a showing of structural error. *See Harkless v. State*, No. 16-2082, 2017 WL 6513966, at *2 (Iowa Ct. App. Dec. 20, 2017) ("We are unable to find counsel's performance so objectively lacking as to cause a structural error."); *Rickey v. State*, No. 16-1212, 2017 WL 2461560, at *3 (Iowa Ct. App. June 7, 2017) ("Unlike *Lado*, in which counsel took no action at all, Rickey was not completely denied counsel, actually or constructively, at any point in the proceeding."); *Allard v. State*, No. 11-1641, 2013 WL 1227352, at *3 (Iowa Ct. App. Mar. 27, 2013) ("Perhaps Allard would have liked a more zealous advocate, but he was not constructively without counsel.").

Finally, Shade contends the district court imposed an illegal sentence when it ordered Shade to pay the law-enforcement-initiative surcharge. The State concedes this point. We agree with Shade and the State that the law-enforcement-initiative surcharge is not authorized by statute for the specified offense. *See* Iowa Code § 911.3. We vacate the law-enforcement surcharge and remand for entry of a corrected sentencing order. *See State v. Phipps*, No. 17-0544, 2018 WL 540438,

at *1 (Iowa Ct. App. Jan. 24, 2018) (remanding for entry of a corrected sentencing order).[1]

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH DIRECTIONS.**

---

[1]As we noted in *State v. McLachlan*,

> [s]ome may question why a revised sentencing order is necessary if an appellate court has finally resolved the issue. We recognize that final sentencing orders are relied upon by many people, agencies, and organizations, including the Iowa Department of Corrections, the Iowa Board of Parole, probation and parole personnel, law enforcement agencies, other government agencies, the business community, and others. It is unrealistic and administratively unwieldy for a copy of an appellate opinion to be sent to or appended to any prior sentencing order that was altered by an appellate opinion. A revised sentencing order provides a final, complete memorialization of the sentence imposed and that must be enforced.

880 N.W.2d 513, 517 n.5 (Iowa Ct. App. 2016), as corrected May 10, 2016.